CLIPPER BELT LACER CO. v. E-W CO. et al.

(Circuit Court of Appeals, Sixth Circuit. November 14, 1916.)

No. 2814.

1. PATENTS ⬯176—CONSTRUCTION—MEANING OF TERMS USED—"INTEGRAL."

The word "integral," as used in a patent claim in describing two parts of a device as integral, is not necessarily used in its narrowest sense, as meaning that they are structurally integral and constitute a single piece, but it may mean that they are permanently held together and are operatively or functionally integral.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 250⅔–252; Dec. Dig. ⬯176.

For other definitions, see Words and Phrases, First and Second Series, Integral.]

2. PATENTS ⬯328—VALIDITY AND INFRINGEMENT—BELT STAPLING TOOL.

The Mitchell & Gunn patent, No. 806,556, for a belt stapling tool, claim 1, construed, and in the light of the proceedings in the Patent Office, which indicate its scope, held infringed.

3. PATENTS ⬯157(1)—CONSTRUCTION—MEANING OF WORDS USED.

The meaning of a word as used in patent claims may vary with the context and with the circumstances.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 229, 230; Dec. Dig. ⬯157(1).]

4. PATENTS ⬯178—EQUIVALENCY—RANGE OF.

In comparing the rule that a claim limitation must be given effect and the rule that the use of an equivalent does not escape infringement, the question is how far the patentee intended to restrict the range of equivalents.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 254½; Dec. Dig. ⬯178.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by the Clipper Belt Lacer Company against the E-W Company and others. Decree for defendants, and complainant appeals. Reversed.

The appellant brought suit below, alleging infringement of patent No. 806,556, dated December 5, 1905, issued to Mitchell and Gunn, for a belt stapling tool. The first claim of the patent is: "A tool or appliance for the purposes referred to, comprising a bracket formed with a stepped portion integral with the bracket, and having a series of slits formed in it adapted to receive jointing staples, and also having a hole formed transversely through the intermediate portions of the bracket between the slits, and a pin adapted to

be passed through said hole, substantially as and for the purposes described." Illustrations prepared by complainant, showing the patent in suit and the defendants' goods, are here reproduced.

The Patent.

Defendants' Device.

In the patented device, the part *a* is shown as a base or anvil, evidently intended to rest upon any suitable support. Part of this plate is thicker than the remainder, leaving a square flange or shoulder, as shown. The upper face of the anvil therefore may be said to be stepped. In the raised portion are cut, side by side, a series of slots indicated by *d*. The portions not cut away remain to form partition walls between the slots. Transversely through these walls are bored holes indicated by *g* and *g'*. When the device is used, prepared staples of the form shown by *e* have their closed ends inserted in these slots with their bottoms resting on the stepped down part of the anvil. In this way, a series or gang of these staples is held upright and in position to have a belt end inserted between the prongs. When the series of staples has been so placed, a pin is inserted laterally through the series of holes, *g*, holding the staples against backward motion, and another pin through the series of holes, *g'*, holding them against forward motion. Then, after the belt end is in position, a suitable pressure or blow from above drives both prongs of the staple into the belt from above and from below and leaves the bend of the staple projecting free from the belt end. Another belt end having been similarly treated and each being thus provided with a series of projecting loops, these loops on the respective ends are overlaid and a pin passed through all of them, whereby the two ends become fastened together with a pivoted joint.

Defendants use pivoted jaws, both upper and lower jaws having the face portion pivoted so as to permit slight rocking and insure parallelism in the final pressure in spite of some variation of the belt thickness. Pivoted to the lower jaw—or, rather, carried by the same pivot which carries both jaws—is a forwardly projecting block practically rectangular and marked *d*, the front portion of which is provided with a series of vertical slots having partition walls left between them and pierced transversely by a hole for the reception of the provided pin, *g'*. This block may swing slightly up and down, and it results that when a larger size of staple is used, the bending point of which should be a little higher from the lower jaw, this block and the pin which it carries may rise somewhat, and there comes a feature of adjustability, not found in the patent.

The District Court thought the patent was not infringed and this appeal was taken.

Cyrus W. Rice and Luther V. Moulton, both of Grand Rapids, Mich. (Lewis E. Flanders, of Detroit, Mich., of counsel), for appellant.

W. J. Belknap, of Detroit, Mich., for appellees.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

DENISON, Circuit Judge (after stating the facts as above). The patented device is very simple. If only one staple is considered the device is seen to be a mere driving guide of suitable shape, and its

patentability would be, at least, doubtful; but the invention consists in providing a series of these, side by side, so that several staples can be driven at once and will be held and driven in that precise position necessary to bring all the extended loops in lateral alignment so that when the two belt ends are united and a pivot pin inserted, every loop will bear on the pin. This might have been done by inserting in the slots and from the front a gang of formers all moving into position simultaneously and over which the staples could have been bent, but the insertion and withdrawing of such formers would have been difficult. Perhaps other means could be devised, but the idea of accomplishing this by a laterally sliding pin, easily inserted after the staples were in place, and easily withdrawn after the staples were driven, was entirely new with the patentees and seems to have been a happy thought solution. So far as this record indicates, no pins or other resisting means had ever been placed in the inner bend of the partly formed staple to serve during the remainder of the forming and during all the driving process, first as a forming anvil, and then as a holding means, and there had never been any device for holding, aligning, forming, and driving a series of staples of this class. We know nothing about the earlier clamping tools to which the patent refers; they may well have been for a single staple. The use of a pin inserted laterally through a series of apertures was known in a device for weaving a continuous wire belt lacing, which, after manufacture, was removed from the forming device and fastened to the belt end by some independent means. This hardly even suggested the use of a pin with a series of separate staples during the driving process.

This case is an appropriate one for giving some force to public use in determining whether the new step taken by the patentees was so simple and obvious that it cannot be called patentable invention. Fastening belt ends together by staples of this kind was known, but there was no tool of this class for doing the work. The patent was followed by a considerable sale, in the exact patented form, and if the invention was of the scope we have supposed, it is embodied in the later forms, which had a very large sale. We conclude that Mitchell and Gunn were entitled to a patent covering the use of this retaining pin in this situation, whereby the series of otherwise independent slots were united into one combination for the purpose and with the result of getting perfect alignment; and the patent which they secured is entitled, so far as the language of its claim will permit, to a range of equivalents accomplishing this measure of monopoly.

The dissimilarity which we observe when such a plate or base as the patent shows is compared with a pair of pivoted jaws is only superficial. Not only is the lower or anvil member of a pair of jaws the plain equivalent of a separate plate having the same resisting and forming functions; but this very pivoted jaw construction was proposed by the patentees as one form of using their invention. When they filed their application, they said that the necessary closing of the staples could be accomplished by hammering from above, or by applying a suitable pressure plate, or by uniting their forming plate with such a pressure plate in the form of pivoted jaws; they say the separate base plate, used alone, is the "simplest form" of their invention. Although

they struck out this part of the description in supposed compliance with Patent Office objections, the original application serves to illustrate that the equivalency of a pivoted upper jaw and other means for pressing the staples home was apparent then as now.

[1] It is plain, also, that the defendants have adopted the substance of the invention, as above analyzed. We come, therefore, to the question whether, when we have invention of considerable merit, and adoption by the defendant of everything that was patentably new therein, the language of the claim has been so limited that the defendants' device is not within the monopoly. The answer to this question depends upon the force to be given to the word "integral," as found in the claim. If it means that the portion of the device upon which the lower leg of the staple rests horizontally, and which resists the downward pressure, and the portion which is raised higher and is slotted, so as to hold and guide the staples vertically, are integral with each other in the strictest sense of the word—i. e., structurally integral—defendant does not infringe. If we speak of two parts of a cast metal structure as structurally integral, we mean that they are cast together in one piece, not that they are made separately and assembled, no matter how permanently. In defendants' device, the lower or anvil portion is cast separately and pivoted to the lower jaw; and its higher or slotted guide portion is formed separately and then pivoted to the same lower jaw, so as to be adjacent to the other co-operating portion. Each has a slight rocking motion on its pivot, and the two parts, therefore, have some motion relative to each other, and they are not integral with each other in the narrowest meaning of the word; but the word does not, necessarily, have only this meaning.

When we say "integral," we may be thinking of structure or we may be referring to performance and function. When two parts, though made separately, are permanently fastened together, so that they work in the same way as if they were a physical unit, they may well be said to be functionally integral. In this sense, they are to be distinguished from two parts which operate independently of each other, and in this sense, defendants' parts may be called integral. The lower part and the raised part are held permanently in the same substantial relation to each other, and neither part can be removed or made inoperative. The guiding slots with openings for the pin are always ready to receive, hold, and position staples resting on the lower part, and during both the forming and the driving of the staples the two parts do not lack the smallest fraction of co-operation which they would have if they were structurally of one piece. True, they have an additional capacity. They have the strength and permanency of association and capacity to co-operate in resisting opposing strains, which would be found if they were made of one piece, and, in addition to this, they have some relative adjustment in one direction only. That this difference in functions is in addition, and not in substitution, is apparent from an exhibit in which these two parts and the jaw which carries them in defendants' tool have all been united rigidly by welding; and this modified device, for the appropriate size of staples, is just as operative as plaintiff's or defendants' unmodified device. It would be an equivalent variation from the patented form to give the raised por-

tion a relative vertical sliding motion, but by means which prevented the two parts from being separated. Such a device, like defendants', would be structurally nonintegral, but for every functional purpose integral. Are there sufficiently compelling reasons for adopting, in this case, the most limiting definition of the word?

[2] We find in the Patent Office proceedings no estoppel which requires the same strictness of construction as if integrality had been the feature upon which applicant and the Patent Office both relied to avoid the cited references and to import patentable novelty into a claim otherwise devoid of it. The claim, as first presented, contained no reference to integrality, and no reference to the hole and pin method of positioning and holding the staples, but claimed broadly a block with a stepped portion, and with the upper portion slotted to receive the staples. This was rejected on reference to Southwick, who had a device for uniting belt ends by driving vertically parallel legged staples, one leg into each end. It had a solid lower plate or die to receive and clinch the lower staple ends, and the upper part, containing the staple guides, was split vertically and centrally at right angles to the plane of the staples. The two halves of this guide were permanently pivoted at one end to the lower plate. In operation, the two belt ends were laid abutting each other on the lower plate. The upper guide halves were then brought together and clamped into position and down on the belt ends, and the staples were then driven by staple plungers, which followed them down through the guides. To meet this reference, applicants inserted in the claim the statement that the lower and the raised portions of their bracket were integral. If the Patent Office had thereupon granted the patent, there would have been a perfect case for applying, as far as it might go, the rule of estoppel; but it did not. It rejected the amended claim, and upon the same reference. Applicants' attorney then insisted upon this distinction, and said:

"It should be particularly noted that, in the present application, the stepped portion of the bracket is formed integrally therewith and is immovable on the base portion. This, I contend, forms a much simpler device than Southwick's and, I think, shows a patentable difference, such as is claimed in claim 1."

The Patent Office again rejected the claim upon the same citation. Thereupon applicants inserted the reference to the transverse holes and pin, and the patent issued. The reasons for the repeated rejections of the claim, after it was amended by inserting the word "integral," were not given by the Patent Office; but it must be assumed that the rejections were because of the familiar principle that there is, normally, no patentable difference between making an article in one piece or in two pieces. In this ruling the applicants acquiesced, and so we find applicants and Patent Office agreeing that the patentability of the invention over the references did not lie in the feature of integrality. It is evident that if the applicants had finally erased this reference to integrality, and left the claim in this particular the same as it was originally, the patent would have issued just the same. Neither is it now sought to give the claim such construction as would cover Southwick and similar devices. They are of a different class from the one in which both plaintiff and defendants are found. They do not contain at all the chief characteristics of the present invention; i. e., trans-

verse holes and the pin for simultaneous positioning. The claim of estoppel by what occurred in the Patent Office must therefore be discarded; and the limiting reference to integrality must be treated both as unnecessary and as voluntary.

Although it cannot be arbitrarily disregarded because it was unnecessary and voluntary, and because it had nothing to do, and was not finally thought to have anything to do, with patentability, yet the defendants' stepped staple holder, which is otherwise the full equivalent of the patented bracket, will not be denied such equivalency merely because the two portions are not, in every sense, integral, if they do, nevertheless, in any fair way, respond to that word. Although the Patent Office proceedings do not raise an estoppel, they do aid in determining the meaning of this limitation. It was intended by the applicants to distinguish from Southwick. In the applicant's device, the base or clinching face portion and the slotted portion were always and permanently held in a certain relation to each other, whereby the slotted portion was always in a position to receive and hold the series of staples ready for driving. From the beginning to the end of the using process, the slotted portion lay at the end of and stepped above the clinching face. It could not be removed from that position, unless one destroyed the tool instead of using it. In Southwick, the upper slotted portions of the tool were necessarily removed from position and swung out of the way to allow the belt to enter, and when they were united to make a complete staple guide, they were clamped in position over the lower plate and held rigidly in reference to each other only by a binding screw or such other temporary adjustment as might be made. Both by the use of the word and by the communications addressed to the Patent Office, applicants showed that they intended "integral" to refer to a device having the characteristics of the former class as distinguished from the latter. They pointed out that, if one of the Southwick members were opened and turned away, it would be inoperative with such a staple as theirs, while, in their device, the slotted portion was immovable on the base portion, and they urged that they were justified in claiming a device in which the vertical slots for holding the staples are "stationary."

Applying this differentiation to defendants' tool, we see that it is to be classified with Mitchell and Gunn rather than with Southwick. In defendants' tool, the base portion and the slotted portion are permanently held together. The slotted portion lies at the end of and rises above the base portion, and is always ready to receive and hold staples. This mutual working relationship of the two parts cannot be changed, unless one destroys the tool instead of using it. The precise fixed lateral relationship of the two parts cannot, in any wise, be varied; such variation as there may be is vertical only. Interpreting the term by the intent thus evidenced, and by its entire immateriality in giving patentable invention, and by the very strong presumption that there could have been no intent to make the patent worthless through a provision that, by an improvement, the patent would be avoided, we do not hesitate to conclude that the two parts of defendants' bracket are integral in that functional sense which is sufficient to bring them within the field to which the patentees confined themselves.

[3] We do not overlook our recent decision (Michigan Co. v. Monarch Co., 233 Fed. 107, —— C. C. A. ——), in which we considered this same word "integral," and held that it referred to, and so limited the patent to, structural integrality. The two cases only illustrate that the meaning of the same word may vary with the context and with the circumstances. In that case, the device comprised two members, and each member, several parts. The claim specified that one part should be integral with its member, and, in defendants' device, this part, constructed separately, was first permanently fastened to, and became a permanent part of, the other member. Such integrality as resulted between that part and that member, with reference to which the patent used the term, came only after both members had been assembled into permanent relationship. There, also, we interpreted the word with reference to the way which it distinguished from the reference which had been cited before the word was inserted in the claim, and, by all the circumstances, we were led to conclude that such ultimate functional integrality as there was did not satisfy the limitation as the applicant had intended it to mean. Somewhat similarly, in Rowley Co. v. Columbus Co., 220 Fed. 127, 134, 136 C. C. A. 81, we considered the limitation implied by the word "independently," and found that there was infringement, even though defendants' device was not independent in every sense, if it was independent to the extent necessary to get the result which the patentee had in mind when he selected the word. His selection—as here—was unfortunate, because his chosen word was capable of too broad a meaning. So the Circuit Court of Appeals of the Second Circuit, in Thacher v. Transit Co., 234 Fed. 640, —— C. C. A. ——, where the limiting force of the word "independent" was under consideration, and, applying the familiar rule that when two meanings are possible, the claim should be interpreted so as to give life to the patent, made a distinction between "independent mechanically" and "independent in action."

[4] The rule that a claim limitation must be given effect, and the rule that the use of an equivalent does not escape infringement, sometimes seem to have an uncertain line of demarcation; but, after all, the question is how far the patentee, by his action and by his choice of words, either did intend or must be deemed to have intended that the range of equivalents should not extend far enough to include defendant's device. We have frequently declined to give to a word or phrase in a claim its prima facie limiting effect, and we have felt at liberty so to decline when there was room for construction, but not when a specific meaning was clearly intended. For recent examples in this court of applying a liberal construction of claim language, so as to include devices which might seem beyond the claim, see National Co. v. Mark, 216 Fed. 507, 513, 133 C. C. A. 13; Schiebel Co. v. Clark, 217 Fed. 760, 771, 133 C. C. A. 490; Frey v. Auto Co., 236 Fed. 916, —— C. C. A. ——, October 3, 1916.

We conclude that defendants infringed the first claim of the patent, and thus it becomes unnecessary to consider whether their backwardly resisting rear slot wall is or is not the full equivalent of the patentees' backwardly resisting pin, as specified in the second and narrower claim.

The judgment must be reversed, and the case remanded for the usual injunction and accounting.