### JONES et al. v. GENERAL FIREPROOFING CO.*

(Circuit Court of Appeals, Sixth Circuit.  June 4, 1918.)

#### No. 3051.

1. PATENTS ⬛328—INVENTION—SHEET METAL EXPANDING MACHINES.

   The Curtis patent, No. 670,606, on machines for expanding sheet metal, claim 13, *held* invalid, as not involving invention, but the thought that automatic opening mechanism could be made to operate in a transverse plane; it not being patentable merely to do by automatic machinery what has commonly been done by hand.

2. PATENTS ⬛101—CLAIMS—PART OF DEVICE.

   Claims of a patent, intended to reach the operation of half of the device considered by itself, may be valid.

3. PATENTS ⬛328—VALIDITY—SHEET METAL EXPANDING MACHINES.

   The Curtis patent, No. 796,402, on machines for expanding sheet metal, claim 3, *held* to be for the diagonal edge over which the sheet should be drawn into another plane as it progressed longitudinally, a new element in the association, and to be valid.

4. PATENTS ⬛165—CONSTRUCTION—LIMITING WORDS.

   Limiting words in the claim of a patent, relied on in Patent Office to differentiate it from a prior patent, while to be given their full meaning, if clear and definite, when developing ambiguity should not be read any more broadly than is reasonably necessary to serve such purpose of differentiation.

5. PATENTS ⬛328—INFRINGEMENT—SHEET METAL EXPANDING MACHINES—DRAWING.

   The Curtis patent, No. 796,402, on machines for expanding sheet metal, claim 3, *held* infringed by defendant's machine, as "drawing" the sheet; claims 5 and 9 also *held* valid and infringed.

6. PATENTS ⬛328—VALIDITY—SHEET METAL EXPANDING MACHINES.

   The Curtis patent, No. 796,402, on machines for expanding sheet metal, claims 1, 8, and 10, *held* invalid, as too broad.

⬛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*For opinion on motion for rehearing and to reopen, see 254 Fed. 970, —  C. C. A. —-.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Suit by Breckenridge Jones, trustee, and others, against the General Fireproofing Company. Bill dismissed, and complainants appeal. Reversed and remanded.

Dyrenforth, Lee, Chritton & Wiles and Russell Wiles, all of Chicago, Ill., and Bates & Macklin, of Cleveland, Ohio, for appellants.

Hoyt, Dustin, Kelley, McKeehan & Andrews, of Cleveland, Ohio (Charles Neave, of New York City, and Fred L. Chappell, of Kalamazoo, Mich., of counsel), for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SESSIONS, District Judge.

DENISON, Circuit Judge. [1] For lack of infringement, the court below dismissed the bill of the appellants charging infringement of two patents issued to Curtis, one No. 670,606, of March 26, 1901, and the other No. 796,402, of August 1, 1905, upon machines for expanding sheet metal. Both patents relate to a device which receives as its raw material to be acted upon a slitted sheet of metal prepared as described in our opinion to-day filed in No. 3032, Jones v. Sykes Co., 254 Fed. 91. The final product of the machines of the patents in suit was intended to be used as metal lath. It was not new in itself. It is fully enough described in the opinion of the Supreme Court in Expanded Co. v. Bradford, 214 U. S. 366, 376, 29 Sup. Ct. 652, 53 L. Ed. 1034, as being the product of the methods which the patentee in that case undertook to supersede by his patent there involved. It had also been known that after a sheet was fully cut, as, for example, by the Curtis machine of the patent involved in the Sykes Case, and after the sheet was thus ready for expanding by a pulling or stretching force, such force would be much more effective if exerted at a lateral angle to the plane of the sheet than if exerted in the same plane. This was obvious, since, if the force were exerted in the same plane, the sheet could yield and expand only by a distortion and twisting at and near the bonding points, while, if an equivalent force were exerted at, e. g., a right angle to the plane of the sheet, the necessary yielding and expansion would call only for a bending of the strands without material twisting, and would produce an approximately diamond-shaped mesh (quasi hexagonal) with the strands lying edgewise in the new plane instead of flat in the old. This had been accomplished by taking the finished sheet after it had come from the slitting machine, seizing the opposite edges by suitable holders, and then carrying them apart from each other in a transverse plane. This had been an essentially manual operation, although aided by hand-operated mechanism. Curtis was the first to construct any machine which would receive at one end a ready slitted sheet, carry the same longitudinally along through the machine, and deliver at the other end the transversely expanded product ready for use—all without intermediate handling or attention. The novel characteristic of his machine was to expand transversely and progressively as an incident to the longitudinal feed and travel of this slitted sheet.

In his first machine (670,606), he did this by employing traveling grips which seized the edges of the sheet as it passed longitudinally off the end of the horizontal feed table, and which grips traveled in angling paths forward from, and transversely up and down from, the feed table, thereby gradually expanding the sheet in this transverse plane until the full intended width was reached. His thirteenth claim, the one said to be infringed, reads as follows:

"The machine for opening or expanding sheet metal the slits in which have been previously cut, wherein are combined means for feeding the slitted sheets and means acting to open them by opening the strands between the slits in a direction substantially at right angles to the plane of the sheet, substantially as specified."

The other claims of the patent covered, with various breadth of expression, the specific means which Curtis showed and described, and claim 13 must be considered as reaching any suitable feeding means combined with any suitable opening means which automatically bend the strands at right angles to the plane of the sheet as it leaves the end of the feed table. Thus construed, the claim did not express a patentable invention. The history of the transaction makes this clear. Caldwell had devised a machine which gripped the slitted sheet by its edges as it left the horizontal feed table and opened it in its own plane. Curtis, as a mechanical expert, was asked by the owner of the Caldwell invention to see if he could improve it. He knew that the sheet ought to be opened in a transverse plane, and knew that it was common practice to do this manually, and he modified and adopted the Caldwell mechanism so that the grips moved away from each other up and down instead of sidewise. He was entitled to a patent upon the devices by which he caused this to be done and to a fair measure of equivalency; but we see no invention involved in the mere thought sought to be monopolized by this thirteenth claim, that automatic opening mechanism could be made to operate in the transverse plane. To find invention in such thought would be to say that it is broadly patentable merely to do by automatic machinery what has commonly been done by hand, and the general rule is to the contrary. Marchand v. Emken, 132 U. S. 195, 199, 200, 10 Sup. Ct. 65, 33 L. Ed. 332.

The prosecution, under the second patent in suit, is based upon claims 1, 3, 5, 8, 9, and 10. Claim 3 reads thus:

"In a machine for expanding previously slitted sheets, the combination with a support over which the slitted sheet is moved, of means for continuously feeding the sheet lengthwise along said support and means for drawing it away from the plane of the support as it passes off the same, substantially as specified."

[2] In this patent, Curtis took a completely slitted sheet and conveyed it longitudinally along a feed table. This feed table was broken away on a diagonal line commencing at one of the forward corners and extending back at the desired angle to the other side. The result was that, as the sheet fed forward, first one corner would pass off the supporting means, and then a gradually increasing triangular section would do so, until, eventually, the whole sheet would be passing over and beyond this diagonal edge. Means were then provided for

carrying the free edge of the sheet downwardly at an angle to the plane of the feed table, and, accordingly, the sheet was expanded by pulling it over the diagonal edge. It is true that Curtis showed a double-acting device, so that, in order to apply thereto the foregoing description, his sheet should be thought of as divided into two by a longitudinal center line, the first opening corner of each half sheet being at the central division point between them, and one half being pulled downwardly and the other half pulled upwardly over diagonal edges extending from the two outer corners of the feeding means inward to the center. However, there are claims devoted to this double construction, and the claims in suit clearly have no reference thereto, but are intended to reach the operation of one-half the device considered by itself; and there is no inherent reason why claims drawn on that theory may not be valid.

[3] Our conclusion is that this is a proper case for the application for the principle to which we referred in Davis v. New Departure Co., 217 Fed. 775, 133 C. C. A. 505. From the broad point of view involved in claim 3, the new thing provided by Curtis was the diagonal edge over which the sheet should be drawn into another plane as it progressed longitudinally. This we consider a new element in this association, and it imparts both validity and character to the claim. Curtis did not merely provide a new association of old elements; the thought that the feed table or supporting means could be cut away on a diagonal line so that this diagonal edge would serve as the re-sisting means over which the sheet might be pulled into expanded form was the novel thought, and the other recited elements of the claim only provide its necessary working environment. There is therefore no occasion to confine the claim to the particular operative mechanism shown and described, but infringement will be found if a defendant has adopted substantially this novel element of the claim, even though it is put into association with other elements of distinctly different form from those shown in the patent, provided that they furnish the necessary field for the novel element to operate and to function as contemplated by the patent, and do not omit, in specie and by equivalent, any specified part.

We do not overlook the fact that this diagonal edge is not, in so many words, specified in claim 3; but we conclude that it is im-peratively implied. The claim calls for "a support over which the slitted sheet is moved," and since such a sheet could not be moved lengthwise of the support and drawn away from the plane of the support into expansion as it passes off the same, unless it passes off in a diagonal line, we must conclude that the "support" of the claim is the support thus described. If there were doubt about the nec-essary presence of this element in claim 3, there could be none as to claim 5.

There is the common controversy whether the patented device has been largely used. If the patent is of the relatively generic scope claimed for it, then it has been embodied in machines which have been extensively adopted; if it is of the precise and limited scope insisted on by defendant, it has had no commercial use. In such a case, to

argue against validity because the specific form has not been marketed is to beg the question.

[4-6] Having determined that the claim is valid and has the scope which we have attributed to it, the question of infringement remains. We conclude that this question depends upon the force to be given to the word "drawing," found in the claim. Defendant's machine does not draw the sheet over the diagonal edge in the same manner nor to the same degree that the Curtis device does. The allusion to the drawing function was relied upon during its progress through the Patent Office, to avoid a reference, and it therefore must have the limiting effect which the circumstance requires; but of course it does not follow that the "drawing" must be of the same kind and extent as shown by Curtis.[1] The file wrapper discloses that Pitkin had an earlier patent upon a device which (for the purpose of construing claim 3) we may assume discloses a longitudinal feed table or support broken away in a diagonal line; but Pitkin fed through this device an unslitted sheet, and above the angling edge he placed a corresponding row of star wheels, which operated to slit, punch, stretch, and expand that line of the metal sheet progressing thereunder. The strand thus cut and punched was forced down and away from the plane of the support, and thereupon another strand was treated in the same manner. The result was that the sheet, as a whole, was carried somewhat away from the plane of the support; but Pitkin did not disclose the idea of drawing or pulling the sheet over this edge and thereby accomplishing the expanding. When Pitkin was cited, Curtis met the rejection by pointing out this drawing function. If words so inserted or relied upon as indicating difference, and which thereby become words of limitation, are clear and definite, they must have their full meaning, even though it later appear that the patentee thereby measurably lessened the monopoly to which he was really entitled; but, if these limiting words develop ambiguity, they should not be read any more broadly than is reasonably necessary to serve that purpose of differentiation for which they were adopted. See Clipper Co. v. E. W. Co. (C. C. A. 6) 237 Fed. 602, 608, 150 C. C. A. 484, and cases cited. When we come to consider defendant's form of turning the sheet over the edge, it is evident that the limitation to "drawing" is ambiguous, and we therefore must inquire whether defendant's operation draws the sheet over the edge in the sense in which Curtis said that he did and that Pitkin did not.

Defendant's machine is very different in appearance from Curtis', and its operation is obscure. It has been necessary to study it in detail and observe the function of each part, but we are finally satisfied that it responds to the terms of the claim. It clearly accomplishes the general result; it feeds in longitudinally a completely slitted sheet and delivers the sheet at the other end fully expanded and in a plane right-angled to the plane of feed. It accomplishes this by turning the sheet over a diagonal edge in the feed table. This turning is done by a series of cams or wedges each of which meets and

[1] We give defendant the benefit of all doubts, by assuming that the effect is the same as if the limiting words had been inserted by amendment.

directs away in a right-angled plane one of the diagonal strands, and, as it does so, it pulls open the space between this strand and the next one and bends the intermediate connectors into the new plane. The result is certainly not the effect of a pushing force, applied from beyond or above the plane of feed, as in Pitkin. It certainly is the result of a pulling strain, applied in the plane of the expanded sheet, as in Curtis. A detailed discussion of the operation involved would serve no good purpose. It is enough to say that, taking Curtis and Pitkin as the prototypes of differentiated classes, we feel confident that defendant's device must be classified with Curtis; and, consequently, infringement must be found.

We see no vital distinction in the fact that Curtis' machine shows a pull transmitted from the further margin through the entire expanded portion, while defendant's bending and turning force comes directly from the next strand, and is exerted strand by strand. Theoretically, Curtis completes his expansion strand by strand; practically, he probably does not. In theory, defendant's cam or abutment has served its full office when it has turned a strand away in the other plane and bent the connectors; in practice, the cams are continued so that they control the whole expanding portion. The essence of Curtis' invention—turning the slitted sheet at an angle as it flows over the diagonal edge of the support—is present just as much if the effective strain comes from the nearest strand as if from one or several further away. There are claims which say or imply that this operating pull is to come from the further margin of the sheet, according to the form shown in the drawing; not so with claim 3.

Claim 5 we think controlled by the same consideration as claim 3, and it also should be held infringed. Claim 1 when compared with other claims cannot well be confined to a device having the diagonal edge which we think the essence of the invention. It seems intended to be broad enough to reach a sheet moving laterally over the edge of the support. Unless it has this construction, it does not seem to add anything to the other claims, and, with this construction, we think it too broad to be valid. Claims 8 and 10 are invalid for the same reasons. In view of our other conclusions, it is not very important whether claim 9 is valid and infringed; but we think it is. The claim was not rejected on Pitkin, does not contain the limitation to "drawing," and infringement is clearer than of claim 3. As to validity, Pitkin comes nearest to anticipating. Since Curtis regards his form as duplex, divided by a longitudinal center line, he must treat Pitkin from the same standpoint; but we cannot regard Pitkin's series of lower cutting laws, diagonally arranged, as the full equivalent of Curtis' diagonal edge over which the previously slitted sheet is turned and opened. We are not here constrained by the estoppel from any action by Curtis in the Patent Office.

The decree below is reversed, and the case remanded for the entry of a new decree in accordance herewith and pursuant to the disclaimer practice pointed out in Westinghouse Co. v. Cooper Co., 245 Fed. 463, 470, 157 C. C. A. 625. Appellants will recover one-half the costs of this court.