## HULBERT & DORSEY et al. v. BRIDGMAN CO.

(District Court, D. Delaware. March 7, 1924.)

### No. 511.

Patents ⚙═➤328—No. 1,093,626, for improvements in toilet plumbing fittings, held infringed.

Patent No. 1,093,626, for improvements in plumbing fittings relating to a row or series of toilets, each discharging through a separate horizontal pipe, which passes through a partition of the building and connects with a common drain or soil pipe running at right angles to the discharge pipe, *held* infringed.

In Equity. Suit by Hulbert & Dorsey and others against the Bridgman Company. Decree for plaintiffs.

Louis K. Gillson and L. B. Mann, both of Chicago, Ill., and Ward, Gray & Neary, of Wilmington, Del., for the plaintiffs.

William S. Hodges, of Washington, D. C., and William G. Mahaffy, of Wilmington, Del., for defendant.

MORRIS, District Judge. This is a suit in equity instituted by Charles P. Hulbert and others against Bridgman Company for the alleged infringement of the two claims of letters patent No. 1,093,626 for improvements in plumbing fittings. The usual decree upon final hearing is now sought.

The invention relates particularly to fittings for a row or series of toilets, each of which discharges through a separate horizontal pipe, which passes through a partition or wall of the building and there connects with a common drain or soil pipe running at right angles to the discharge pipes. The several toilet fixtures are at a uniform height from the floor. As a consequence all the horizontal discharge pipes are likewise at a uniform and standardized distance, $12\frac{1}{4}$ inches, above the floor. Yet, to provide suitable drainage, the soil pipe must be inclined towards the stack, or perpendicular pipe, leading to the sewer. The problem was how to connect the discharge pipes of uniform height with the inclined soil pipe, the center line of which at all points of connection (save one, possibly) would be at varying distances below the level of the discharge pipes. In the prior art this was accomplished in a number of ways not necessary to be here considered. The patentee's solution was a plurality (corresponding to the number of bowls) of integral fittings, best described in the claims, which are:

"1. A drain for closets and the like, comprising, in combination, a plurality of inclined pipe sections located in alignment and a plurality of integral fittings, each comprising a tubular part interposed between and connecting adjacent pipe sections and a vertically extended lateral receiving chamber communicating with the bore of the said tubular part and having an upright end wall, the said end walls of all of the said fittings being drilled at the same elevation for connection with the horizontally directed outlets of wall closets and the like.

"2. A fitting for inclined drains comprising in combination, a cylindrical tubular body portion having its opposite ends adapted for connection with

⚙═➤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sections of the drain pipe and a pair of oppositely facing vertically extended lateral arms, each having an end wall adapted to be drilled at any one of a plurality of different elevations for connection with the horizontally directed outlet of a wall closet."

· The "lateral receiving chamber" is of sufficient vertical extension to offset the pitch or fall of the soil pipe between the points of connection of the end toilets. The holes drilled in the upright end walls of the several receiving chambers, into which the horizontal discharge pipes of uniform height are to be inserted, are, like those pipes, at a uniform distance from the floor of the room. But the vertical distance above the bottom of the receiving chamber at which the hole is to be drilled depends upon the location in the row of the connecting toilet, or, otherwise expressed, depends upon the extent to which the soil pipe at the point of connection is below the level of the discharge pipe with which it is to be joined. As the discharge pipes are all on the same level, while the soil pipe is inclined towards the stack, the hole drilled in the wall of the receiving chamber to receive the discharge pipe of the toilet nearest the stack is at or near the top of the wall, and the hole for each succeeding toilet is at a successively lower point in the wall of the corresponding fitting. In plaintiffs' structure the upright end wall is cast as an integral part of the fitting.

In defendant's structure the upright end wall of the elongated receiving chamber is not cast as an integral part of the structure, but is cast separately and bolted on during installation. This separate part is a plate cast with an opening (which must be smoothed and finished by drilling) to receive the discharge pipe. The opening is always in the same position in the plate. The plates are of uniform size and of sufficient area to permit the opening therein to be placed at any point from top to bottom of the vertically elongated receiving chamber. During installation the plate is given such elevation as will permit the discharge pipe to enter the opening in the plate. It is then bolted to the drain. When installed, the opening in the end wall of defendant's structure is in the same position with respect to the floor of the room and the bottom of the receiving chamber that the opening in the end wall of plaintiffs' structure would be if the latter were installed in place of the former. This is equally true, whatever position along the line of the soil pipe the fitting may occupy.

The defendant contends that the fact that its end wall is not cast as an integral part of the fitting, the fact that the plate has an area sufficient to close the end of the receiving chamber at whatever elevation thereon the hole is placed, and the further fact that the hole is cast and not drilled in the plate, place the defendant's structure outside both the letter and the substance of the claims in suit. It is true that in defendant's structure there is complete interchangeability of parts; the drains, like the plates, being of uniform design and dimensions. It is likewise true that plaintiffs' fittings as cast are of uniform design and dimensions; but after the hole is drilled in the end wall the fitting lacks the equality of interchangeability, and is then adapted for use only at the location in the soil pipe determined by the vertical position of the drilled hole. The drilling cannot be done by the installing plumb-

er, but must be done at the factory. The holes are there drilled at the several vertical positions in the upright wall necessary to meet the standardized requirements of the several toilets in the row. But while these facts may indicate that defendant's structure may possess some practical advantages over that of the plaintiff, it does not follow that those advantages are not the result of an improvement upon plaintiffs' invention rather than the result of a departure from the substance thereof.

I take it that, if some one should cast plaintiffs' fitting in two parts—the body or drain part and a solid upright end wall for the receiving chamber—and should then bolt the parts together and drill a properly placed hole in the wall, he would clearly infringe. I take it that, if some one by the use of a plurality of molds should cast, instead of drill, the hole in a fitting otherwise identical with that of the plaintiff, he would unquestionably infringe. I think infringement is not avoided by one who does both. The defendant has adopted the substance of the invention of the patent in suit. The defendant's device, though structurally nonintegral, is for every functional purpose integral. See Clipper Belt Lacer Co. v. E–W Co., 237 Fed. 602, 150 C. C. A. 484. In my opinion, the language of the claims is not so limited as to place defendant's structure outside the monopoly of the patent. There is no serious question with respect to validity.

A decree for an injunction and an accounting must be granted.