**SANFORD INV. CO., Inc., et al. v. CRAB ORCHARD IMPROVEMENT CO.**

No. 1031.

District Court, S. D. West Virginia, At Bluefield.

Oct. 28, 1938.

Hebert H. Porter (of Mason & Porter), of Washington, D. C., and Joseph M. Sanders (of Sanders & Day), of Bluefield, W. Va., for plaintiff.

Clarence B. Des Jardins and Halbert P. Brown (of Church & Church), both of Washington, D. C., and George Richardson (of Richardson & Kemper), of Bluefield, W. Va., for defendant.

McCLINTIC, District Judge.

This suit was instituted by the plaintiffs against the defendant, and was based upon the United States Letters Patent, No. 1,809,707, dated June 9th, 1931, for end-gates for mine cars.

The defendant appeared and filed an anwer, and a trial was had in which witnesses appeared for each side, and a great many exhibits were filed as parts of the testimony.

It was suggested by the court that when the counsel for the plaintiffs and the defendant filed their briefs, if they were so inclined, to please file a draft of a suggested opinion and finding of facts as an appendix to their respective briefs.

Counsel for the defendant did file such a draft, which draft is adopted by the court as its opinion and finding of facts, and is as follows:

#### Draft of Opinion by Counsel for Defendant.

This is a suit in equity in which the plaintiffs, Sanford Investment Company, Inc., and Sanford-Day Iron Works, Inc., charge the defendant, Crab Orchard Improvement Company, with infringement of United States Letters Patent, No. 1,809,707, granted June 9, 1931, to Sanford Investment Company, on an application filed September 23, 1929, by George E. Jones, Jr. and Perry S. McCallen, for improvements in mine cars. Legal title to the patent stands in the plaintiff, Sanford Investment Company, Inc., and the other plaintiff is said to have an exclusive license thereunder. Defendant, in its answer, denies infringement and asserts the invalidity of the patent, on the grounds (1) that Jones and McCallen were not the original and first inventors of the subject-matter, the same having been invented, if invention was involved therein, by Edward Graff, residing at Mt. Hope, West Virginia, and (2) that the alleged improvements of the Jones and McCallen patent did not involve invention, but represented the exercise of mere mechanical skill, in view of the prior art.

The answer included a counterclaim, praying for a declaratory judgment that the patent is invalid and not infringed, but, since the relief prayed for in the counterclaim will be accorded by our decree dismissing the bill of complaint, no further consideration need be given the counterclaim.

The Jones and McCallen patent describes a mine car of the end-dump type, having a hinged end-gate for closing one end of the car. The improvements are said to relate to the particular hinge construction provided for this end-gate. The gate consists of a flat metal plate extending across one end of the car and having a pair of triangular plates extending at right angles to the end-gate, riveted thereto, and extending inwardly of the mine car adjacent the inner surfaces of the side walls thereof. These triangular hinge plates have been referred to as inside plate bails. These plate bails are pivotally connected to the car body by bolts, each of which extends through a brace on the outside of the mine car, the side wall of the car, the corresponding plate bail and a bracket fastened to the inside of the side wall. The upper end of each plate bail is shown rolled outward and downward, forming a hook flange embracing the upper edge of the adjacent side wall, and the patent states that this engagement is for the purpose of preventing spreading of the side walls under load. In short, the patent discloses an end-gate structure consisting of inside plate bails having hook flanges hooking over the upper edges of the car side walls.

Claims 3, 7, 9 and 15 are in suit, and are as follows:

"3. In a car of the general type described, the combination of car body sides and an end gate, the end gate having rearward-

ly extending and relatively wide thin arms, said arms being hinged to the car body sides and being in close upright relationship with the inner surfaces of the car body sides for substantially the entire upright height of said arms."

"7. A car of the general type described, including car body sides and an end-gate, the end-gate having sheet metal arms lying closely against the inner faces of the car body sides and hinged to said sides and having their upper edges rolled outward across the upper edges of the car body sides for stiffening said arms and to rest on and engage said sides to restrain spreading of said sides."

"9. In an end dump mine car, the combination of substantially upright side walls and a front end-gate adapted to be lifted when the car is tilted forward for end dumping, and having sheet metal arms connected with the end-gate and extending rearward parallel to and near the inner faces of the side walls and being hinged to said side walls and being of substantial width and of substantial stiffness, whereby the sidewise outward pressure of the lading is largely taken by said arms, the side walls overlapping a major portion of the arms."

"15. In an end dump mine car, the combination of car body side walls, an end gate adapted to be lifted when the car is tilted for dumping, arms connected with the end gate and extending parallel with the car body side walls and near the faces thereof, pivotal supporting means for the end gate, and laterally extending flanges carried by the arms in position to engage extended portions of the upper edges of the car body sides."

Defendant is engaged in the mining of coal in this district. It is not a manufacturer of mine cars, but is sued as a user of certain mine cars sold it, prior to the issuance of the patent, by the Watt Car & Wheel Company, of Barnesville, Ohio. The structure used by defendant is shown by a certain photograph and blue prints, Plaintiffs' Exhibits 2 and 3, and by the model of the Crab Orchard car, Defendant's Exhibit 36. These mine cars, which are alleged to infringe the patent, are of the end-dump type, having end-gates hinged by inside plate bails. At the upper edge of each of the plate bails there is an integral stiffening flange formed by turning the upper edge of the plate bail in an outward direction, so that the flange extends over and rests on extended portions of the top edge of the side wall of the car when the end-gate is closed. These flanges do not hook over the upper edges of the side walls to resist spreading, as do the hook flanges of the Jones and McCallen patent.

Claim 7 calls for an end-gate having inside plate bails "having their upper edges rolled outward across the upper edges of the car body sides for stiffening said arms and to rest on and engage said sides to restrain spreading of said sides". This limitation in the claim restricts it to the hook flange construction shown in the patent and, since defendant's cars do not have plate bails with flanges hooking over the car body sides, they do not infringe claim 7 of the patent.

As stated heretofore, defendant pleaded, in its answer, that the subject-matter covered by this patent was not the original invention of Jones and McCallen, but that it had been originated by Mr. Edward Graff. In support of this defense, Graff and M. C. Moore testified in open court. Graff is general manager of the New River Company and, in 1928, was engineer for that company. In June, 1928, he was engaged in arranging for the purchase of mine cars for use in the Cranberry mine, operated by a subsidiary of his company. On June 9, 1928, E. W. Light, the Sanford-Day salesman, wrote his company that Graff wanted the end-gate bails on the inside. A month later, July 9, Light made a proposal for the furnishing of mine cars for the Cranberry mine. This proposal did not contemplate the construction shown in the patent and called for outside, not inside, bails. Graff was not satisfied with the structure of the mine cars which the plaintiff, through Light, offered to sell him and, again, told Light that what he wanted was a mine car having plate bails on the inside and provided with hook-over sides to hook over the side walls of the car. He explained this to Light on July 9th or 10th, 1928. The result was that the plaintiff made new drawings showing the changes in construction desired by Graff, and substantially identical with the drawings of the patent in suit, and ultimately sold cars to the New River Company, for the Cranberry mine, in accordance with this changed construction. Graff was corroborated by M. C. Moore, the purchasing agent for the New River Company, and by a number of documentary exhibits.

Strong corroboration of Graff's testimony is found in the correspondence which

passed between him and Sanford-Day Iron Works, Inc., subsequent to the issuance of this patent. Within a few days after the grant of the patent, Graff complained to Sanford-Day that that company had patented features of construction which were original with Graff and had been disclosed by him to the company. In the correspondence which followed during a period of several years, Sanford-Day made repeated attempts to acquire Graff's claimed interest in the subject-matter and to purchase his silence as to the facts of its origin. In all of this correspondence, however, there is no suggestion that Graff was wrong in claiming to have originated and disclosed to Sanford-Day the particular construction covered by the Jones and McCallen patent. Sanford-Day acquiesced in Graff's claim that he originated these improvements.

The patentees, Jones and McCallen, testified at the trial, but they were unable to produce any tangible evidence showing a conception of these improvements prior to the date of the changed drawing submitted in conformity with Graff's specification. They claim to have thought of the idea prior to the date of Light's interview with Graff, but their vague and indefinite assertions to that effect were not corroborated. The court was impressed by the frank and definite testimony of Graff, which was corroborated by documents, and was not impressed by the testimony of Jones and McCallen, which was highly indefinite, vague and uncertain. We have found, therefore, as a fact, that the improvements covered by the patent in suit were not invented by Jones and McCallen, but were originated by Graff and disclosed by him to the patentees and others connected with the plaintiff, Sanford-Day Iron Works, Inc.

■ It is fundamental that a patent is invalid and void if granted on the application of a person or persons who were not, in fact, the original and first inventors of the improvements purporting to be covered by the patent. Kennedy v. Hazelton, 128 U.S. 667, 672, 9 S.Ct. 202, 32 L.Ed. 576; Agawam Woolen Company v. Jordan, 7 Wall. 583, 602, 19 L.Ed. 177; Atlantic Works, v. Brady, 107 U.S. 192, 205, 2 S.Ct. 225, 27 L.Ed. 438. Having found that Jones and McCallen were not the original and first inventors of that for which the patent was granted on their application, it follows that the patent is invalid.

■ The patent is also invalid because the improvements covered thereby were not a patentable invention, but were within the expected mechanical skill of a worker in this art. The prior art includes certain patents and catalogues and also a number of mine car constructions stipulated to have been in public use more than two years before Jones and McCallen applied for their patent. These cars in public use are known, in the case, as the Leckie, Eccles, Admiralty, Sun, Virginia Hill 1910 and Virginia Hill 1913 cars. End-dump mine cars having outside plate bails were old as shown by the Leckie cars and the Lakewood and Enterprise catalogues. End-dump mine cars having the end-gate mounted by means of outside bar bails, that is, bails made up of a triangular framework of bars, were old, as shown by the Simpson patent, No. 1,176,782, and the Willoughby patent, No. 1,162,653. The use, in end-dump mine cars, of hinges for the end-gates, consisting of inside bar bails, is shown in the Eccles, Admiralty and Sun cars, and in the Virginia Hill 1910 car. In view of the use in the prior art of either plates or bars as the bails for the end-gate, and the use of the bar bails either on the inside or the outside of the car body, it required no invention to provide an end-gate mounting consisting of plate bails on the inside. The prior art includes not only the Virginia Hill 1910 car, consisting of bar bails on the inside, but also the Virginia Hill 1913 mine car, in which the end-gate was hinged to the body by triangular plates arranged adjacent the inner sides of the car, and the Virginia Hill 1913 car appears to be a substantial anticipation of each of the claims in suit, except claim 7, which, as we have seen, is limited to a construction in which the plate bails have hook flanges engaging over the side walls of the car. The inside bar bails of the Eccles, Admiralty and Sun cars include vertical bars, the upper ends of which are formed into hooks engaging over the side walls of the car body. Thus, even the feature of hook flanges is old in the art. Accordingly, we find that the structure shown in the Jones and McCallen patent, and purporting to be covered by the claims in suit, represents merely the exercise of mechanical skill and was not an invention. A patent covering a structure embodying nothing more than mere mechanical skill, in the light of the prior art, is invalid. Wine Railway Appliance Co. v. Baltimore & Ohio Railroad Co., 4 Cir., 78 F.2d 312, 319; Enterprise Railway Equipment Co. v. Pullman Standard Car Mfg. Co., 7 Cir., 95 F.2d 17,

20. The patent, as to the claims in suit, is invalid and void for lack of invention.

Our conclusion is that the bill of complaint must be dismissed with costs to defendant. Counsel may present a decree, in conformity with this opinion.