### BESTWALL MFG. CO. v. UNITED STATES GYPSUM CO.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1921.)

#### No. 2764.

1. **Patents ⊙⇒16—Invention not determined by extent of advance.**

Invention is not determined by the extent of advance which the inventor makes in the art.

2. **Patents ⊙⇒328—1,029,328 and 1,034,746, for process for making plaster board and its product held to disclose invention.**

The Utzman patents, No. 1,029,328, for a process for making plaster board, and No. 1,034,746, covering the product, *held* to disclose invention in turning over and sealing the edges of the bottom layer of paper.

3. **Patents ⊙⇒328—1,029,328 and 1,034,746, for process for making plaster board and its product, held infringed.**

The Utzman patents, Nos. 1,029,328 and 1,034,746, covering process for making plaster board and the product thereof, *held* infringed, although defendant did not use several layers of paper and plaster as described in the claim of the process patent.

4. **Patents ⊙⇒157(1)—Product patent may be considered in considering scope of process patent.**

Where a process and product patent were the result of a division, the product patent may be examined to ascertain the scope of invention of the process patent and to define better the equivalents that may fairly be recognized.

---

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit for the infringement of patent by the United States Gypsum Company against the Bestwall Manufacturing Company. Decree for complainant (258 Fed. 647), and defendant appeals. Affirmed.

Clarence E. Mehlhope, of Chicago, Ill., for appellant.

Edward Rector and John W. Hill, both of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Two patents, one No. 1,029,328, covering a process for making plaster board, and the other, No. 1,034,-746, covering the product, the plaster board, are here under consideration. Patentee originally sought his claims in one application, but a division was ordered, and thereafter he proceeded separately with his process and product applications.

Describing the subject-matter of his patent, patentee says:

"Plaster board of various kinds have been made prior to my invention, some of which have been made in molds and others of which have been made by a continuous process consisting in applying alternate layers of plaster and paper or other fibrous material upon a traveling base sheet. The mold method of making plaster board is objectionable, however, for the reason that the size of each slab of board is necessarily limited and, furthermore, for the reason that this method of making boards is a slow, tedious and expensive operation. In the continuous method of making plaster board, it has been the practice to superimpose the alternate layers of plaster and paper and then to trim the edges of the board leaving the raw edges of the plaster and the raw edges of the paper at each side of the board. The paper or covering material in this construction is very easily torn and the edges of the board are readily chipped or broken so that after repeated handlings the boards when ready for use are usually mutilated to a considerable extent.

"My present invention aims to obviate the disadvantages of the boards previously employed and to construct a board, *the edges of which will be entirely enclosed by a sheet of covering material and in which there will be no free or exposed edges of covering material* which will be liable to be torn, loosened, or peeled back in the handling of the board."

Claim 1 of the process patent reads:

"The method of making plaster board which consists in advancing a bottom sheet of covering material, superimposing upon said sheet alternate layers of plastic material and fibrous material, holding the plastic material away from the edges of the covering material so as to leave a portion of said material exposed at each side of said layers, folding the exposed edge portions of said covering material over onto the upper surface of the upper layer of plastic material, applying a separate sheet of covering material over the upper surface of plastic material, said upper sheet being of a width sufficient to partially cover the inturned edges of said bottom sheet, applying pressure to said upper sheet to cause the plastic material to flow between the edges of said sheet and the inturned portions of the bottom sheet, and preventing said plastic material from escaping at the edges of said upper sheet."

Claim 1 of the product patent reads:

"A plaster board comprising a body, a covering of fibrous material adhering to one face of the body folded to inclose an edge of the body and overlie a portion of the opposite face thereof, and a covering of fibrous material for said

opposite face of the body overlying said folded-over portion of the first-mentioned covering but having its edge spaced from the edge of the board."

Referring to the italicized words quoted from the specifications, it is apparent that the virtue of the patent is found in the protection which the covering over the edges affords. Evidence was received tending to support appellee's claim that such covering protected the exposed edge of the gypsum body, prevented waste, strengthened the finished board, increased the output, improved the appearance of the finished product, and reduced cost of production. A very large increase in the production of plaster board followed the appearance of this patented article.

It is unnecessary to separately consider the two patents. Under the facts disclosed in this suit, they fall or stand together.

Plaster boards of the two-ply and of the composite type were old and well known at the time of this discovery. The improved product differs from the product formerly manufactured chiefly in the protection afforded the edges of the gypsum.

Counsel describes the process as follows:

"The patented method consisted, broadly, in pouring a mass of semi-liquid flowing material upon a rapidly moving continuous sheet of paper, folding the edges of such strip upward and inward over the edges of the layer of plastic material, superimposing a narrower continuous sheet of paper upon the bottom sheet and the layer of plastic material thereon, and passing the whole between a pair of pressure rollers, whereby the layer of plastic material is compressed to a uniform thickness throughout the width of the paper where its edges are confined and bound by the in-turned edges of the bottom sheet, whereby the superimposed upper sheet is secured to the layer of plastic material and to the in-turned edges of the bottom sheet by the adhesiveness of said material itself."

We consider it unnecessary to discuss the prior art in detail. Nor do we deem it advisable to discuss the evidence showing the extensive use that immediately followed the appearance of the new board. On these issues the record amply supports the claims of the patentee. On this one issue only may debate arise: Does the contribution spell invention?

This issue we resolve in appellee's favor following the determination of the patent office and the conclusion of the district judge. An elaborate statement of the reasons why we reach this conclusion is neither necessary nor helpful. Utility, increased output, improved product, reduction in cost, are all factors that have been thrown into the scale and are somewhat determinative of this issue.

[1] We may not, and in fact do not, agree with counsel for patentee that this was a "broad novelty," nor with its expert witness that this was a "daring conception." But invention is not determined by the extent of the advance in any art which the inventor makes. Nor can we ignore the presumption which the grant of the patent and the adjudication of the district judge creates in any close case.

[2] In the present suit we find that the use of a covering as a retaining member with its resulting advantages heretofore enumerated was novel. Moreover, to utilize the plastic material thus inclosed as an adhesive material, in securing the edges of the retaining member and to attach the top cover member to it as described in the process, was

novel and somewhat ingenius. Such double use of the plastic material together with the retaining member permitted the manufacturer to increase its output, to lessen the cost of production, to make a more sightly board which "chipped" less readily than the board previously used; and under all of the circumstances we find the novelty was invention.

[3] *Infringement.*—Appellant's claim of noninfringement is based in part on the assertion that its product contains no "alternating layers of plastic material" and alternating layers are not used in its process. Judge Sanborn in disposing of this case aptly said:

"One defense is that defendant's board is not made in alternate layers, but in a single plastic one. Plaintiff insists that the building up of the body of the board in alternate layers of plaster and paper was not of the essence of the invention, but that the really new things discovered by Utzman was the upturning of the edges of the bottom layer of paper, and then sealing or impressing the top layer of paper, a little shorter than the completed board, over the upturned ends of the bottom layer, and into the layer of plaster. Plaintiff's counsel contend that the case falls within the rule of Adam v. Folger, 120 Fed. 260, 56 C. C. A. 450, in this circuit, to the effect that an element of a claim not essential to the result which the inventor desired to accomplish is not absolutely requisite in an infringing device. The construction in alternate layers not being essential to the result which Utzman wished to reach, the fact, it is said, that defendant does not use alternate layers in their board is immaterial.

"It appears by looking at the prior patents that it was old and common to make 'sandwich' board of alternate layers. Utzman did not attempt to claim this as a new feature, but rested his title to invention solely on the turned-over edges, and the impressing of the shorter upper sheet of paper into the plaster, so as to seal up the finished board, and secure the edges against abrasion of the paper. His whole right to invention lies in the new method of binding and sealing the edges, and finishing the board with the top covering of paper. * * *

"The alternative layer feature not being of the real spirit of the invention, a wider range of equivalents is applicable, so as to make the defendant's layer process and board equivalent. Jones v. General Fireproofing Co., 254 Fed. 97, 100, 165 C. C. A. 507."

[4] In addition to the reasons thus named, it is worthy of note that the two patents are the result of a division and therefore the product patent may well be examined to ascertain the scope of the invention and to better define "the equivalents" that may fairly be recognized.

No claim of this patent requires a plurality of plastic layers. One suffices to meet each claim. The process patent does use the term "alternate layers of plastic material," but the solicitor was describing the process rather than the elements that entered into the product. In some plaster boards there are alternating layers of gypsum between which paper or other material is laid. The presence or absence of several layers, however, has nothing to do with the process which patentee was describing in this patent. The covering for the edges of the gypsum was the heart of the discovery.

Contention also is made that appellant does not apply "pressure to the top layer of covering material until its proper surface lies flush with the exposed surface of said inturned portions" as required by claim 2 of the process patent. This denial creates an issue of fact. The district judge was in a better position than we to make a finding thereon.

He found for the appellee and our examination of the drawing and testimony confirms this finding.

Other differences are pointed out and stressed so as to defeat infringement. While it is true that in some of appellant's boards infringement does not appear it is likewise apparent that there are other boards that do infringe.

The decree is affirmed.