## CLAUDE NEON LIGHTS, Inc., et al. v. RAINBOW LIGHT, Inc.

### No. 17.

Circuit Court of Appeals, Second Circuit.

June 14, 1937.

960

Bohleber & Ledbetter, of New York City (Edwin J. Prindle, Thomas Ewing, and William Bohleber, all of New York City, of counsel), for complainants-appellants.

George F. Thompson, of New York City, for defendant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. This is the usual patent suit brought by N. V. Philips' Gloeilampenfabrieken, the owner of United States patent No. 1,726,107, and Claude Neon Lights, Inc., its licensee, for infringement of claims 1 and 3. The invention, which was by Hertz, relates to electric discharge tubes, particularly to electric discharge tubes having a positive column light for lighting purposes. The commercial use of the tubes is for advertising signs.

The specification states that it was a known practice to introduce into a discharge tube having a gaseous filling of neon a little mercury in the form of a mercury drop, that by reason of the heating to which the mercury is exposed during the discharge it volatilizes and its vapor pressure so increases at a certain temperature that the mercury vapor begins to participate in the discharge and the positive light emitted by the tube is produced by radiation of mercury atoms, with the result that the red color of the neon changes to blue.

The inventor goes on to say that if the temperature of the surrounding air becomes too low the vapor pressure of the mercury in tubes of the above kind may so decrease that the blue mercury light will change to red neon light. He says that this disadvantage is eliminated or reduced if some other rare gases are used, for example, argon, and adds that krypton and xenon also will give favorable results. After the foregoing preliminaries, he describes his invention as follows:

"According to the invention a gaseous filling is introduced into a discharge tube with positive column light, which gaseous filling comprises argon and mercury vapor. The gaseous filling may consist of argon, krypton, xenon and mercury vapor. Preferably a gaseous filling of argon and mercury, the argon pressure of which is above 4 millimetres of mercury will be used. Discharge tubes according to the invention are capable of still producing mercury light at temperatures at which a discharge tube having positive light and filled with neon and mercury already produces neon light. This is a very remarkable phenomenon, as the exciting potential of argon is lower than that of neon. One would therefore expect that at a temperature at which a neon mercury discharge tube produces neon light, an argon mercury discharge tube of all others would produce only argon light, whereas experiment discloses that at certain temperatures the contrary is the case.

"A great advantage of the discharge tubes according to the invention consists in that their operating voltage is lower than that of discharge tubes having a positive column light and a neon mercury filling. The efficiency of discharge tubes according to the invention will likewise be greater than that of discharge tubes having a positive light and a gaseous filling of neon and mercury."

The claims relied on read thus:

"1. A discharge tube for positive column light, the gaseous filling of which comprises argon and mercury vapor."

"3. A discharge tube for positive column light, the gaseous filling of which consists of argon having a pressure above 4 millimetres of mercury pressure and of mercury vapor."

At first the defendant made tubes with a filling of argon and mercury but they are said to have proved commercially undesirable, owing to lack of continuous luminosity. Manufacture of these tubes ceased before the date the issue of the patent on August 27, 1929. The only tubes alleged to infringe which were sold by the defendant prior to the filing of the bill of complaint contained mercury with a gas filling having 90 per cent. of argon and 10 per cent. of helium. This last ingredient was inserted to increase the temperature of the tube, and ever since the introduction of helium some rare gas was incorporated in addition to argon in order to provide heating and to keep up the temperature of the tube during cold weather. Since the filing of the bill, it has only sold mercury tubes with a filling of about 50 per

cent. of argon and 50 per cent. of neon gas. The mercury tubes sold by the complainant have been of three kinds; one having argon to the amount of $\frac{2}{15}$ and neon and helium to the amount of $\frac{13}{15}$; one having 50 per cent of argon and 50 per cent. of neon; and a third having 80 per cent. of argon and 20 per cent. of neon.

The trial court did not pass upon the validity of the patent but dismissed the bill on the ground that the defendant's tubes did not infringe because they contained a rare gas other than argon or its permissible equivalents, krypton and xenon.

The question whether the defendant's tubes infringe is a close one. The complainant insists that the inventor made an important contribution to the art by combining argon with mercury vapor and that the addition of another rare gas, whether it was an impairment or improvement, did not take such tubes outside of the claims.

The evident purpose of the inventor was to produce an illuminated blue tube for advertising signs by employing a mercury vapor which would be of that color and would retain its color at comparatively low temperatures. He proposed to employ a positive column lamp and indicated in the specification that if argon was used in a tube with mercury vapor the disadvantages before suffered from neon mercury tubes would be ameliorated or eliminated. He said nothing about incorporating any neon or helium in the tube, each of which was a rare gas operating at a much higher potential than the rare gases, argon, krypton or xenon, and thus producing more heat. The specification, as reasonably interpreted, involved the exclusion of the gases operating at high potentials. The claims in issue specify: (1) A tube "the gaseous filling of which comprises argon and mercury vapor," and (3) a tube "the gaseous filling of which consists of argon having a pressure above 4 millimetres of mercury pressure and of mercury vapor." The remaining claim (2), which is not in issue, also includes none of the rare gases which have a high exciting potential such as neon or helium, but specifies a tube "the gaseous filling of which consists of argon, krypton, xenon and mercury vapor." Thus we have a situation where nothing but argon, or a rare gas that is its equivalent, is suggested in the specification or in the claims. In addition to this we have the proved fact that argon mercury vapor tubes simpliciter are inadequate for commercial requirements and have

not been used by either party since the patent issued. In such circumstances, the introduction of helium or neon in the tube, which raises the potential, heats the tube, and enables it to operate efficiently in lower temperatures than will a mercury tube having argon alone, results in more than a mere improvement. On the contrary, the introduction of the warmer gases produces a quite different device, and one not responsive to the claims calling for a tube the gaseous filling of which (1) "comprises argon and mercury vapor," or (3) "consists of argon * * * and mercury vapor."

While the word "comprises" in claim 1 literally might be an entirely comprehensive term and in some cases might justify the introduction of other gases than argon into an argon mercury tube, the words "consists of" in claim 3 limit the gases of the tube, so far as claim 3 is concerned, to argon and mercury vapor. We think that the verb "comprises" in claim 1 has no wider significance in view of the fact that the specification proclaims the disadvantages of neon for blue advertising signs and lays stress throughout on the advantages of argon, krypton, and xenon because of their low operating voltage. In claim 2 an alternative combination is provided for, and nowhere is the employment of gases with a high operating voltage suggested, but rather the contrary.

In view of the foregoing considerations, Judge Galston was right in holding that the claims in issue were not infringed. (D.C.) 58 F.(2d) 384. But, even if we are wrong in reaching this conclusion about the scope of the claims, complainants must fail because the patent lacks invention.

It is not questioned that argon was used as an ingredient in mercury vapor tubes of the prior art. This appears from United States patents Nos. 614,695 and 614,696 to Peter Cooper Hewitt, and also from United States patent No. 1,291,209 to Franz Skaupy. It is contended by appellants, however, that lights disclosed in the foregoing patents were not positive column lights having cold electrodes operating at a low potential, which the patent in suit is said to contemplate, but arc lights operating at a high potential. It is further said that such arc lamps are not only expensive in operation on account of the high current required, but are too hot for use in exposed positions because likely to crack from rain or snow. Moreover, the argon gas to be used in the

Hewitt and Skaupy patents was not used for the purpose indicated in the Hertz invention and had not the effect of the argon in the Hertz tube. Indeed, there could be no danger that mercury vapor would condense in low temperatures if an arc lamp with hot electrodes was used. Even if we regard the patent in suit as excluding arc lamps such as seem to have been the discharge tubes which the Hewitt and Skaupy patents we believe dealt with, we cannot see that the use of argon with mercury vapor to make blue advertising signs involved invention. In the Licht Article published in July, 1914, it is noted that the heavier rare gases, argon, krypton and xenon, may be "readily laden with mercury vapor." It was likewise long known that argon and the other two gases operated at a low potential—in other words, that they required less operating voltage for excitation. It was also known that mercury when vaporized in a discharge tube emanates a blue light. Indeed, such was the case in the mercury neon tubes mentioned in the specification which it says are undesirable in cold temperatures. We think the effect of the proof is that argon will carry mercury vapor without condensation affecting its blue light longer than neon, and also is advantageous because the color of argon is nearer to that of mercury vapor than the red of neon, and, therefore, is less likely to show streaks of a different color when the mercury vapor begins to fade through condensation. All that argon contributes to the tube, other than its inherent color, is a capacity to carry mercury vapor longer than neon or helium and those characteristics were known. Yet to make a tube for low temperatures, neon or helium should be introduced and in practice are so introduced because they furnish a warmer tube without producing one too hot, as arc neon mercury lamps would be. Therefore, the patent does no more than describe a tube having known characteristics if argon is used and yet practically undesirable without the addition of neon or helium which have characteristics certain to correct some of the defects of the plain argon tube. We think the result of the combination of elements was not surprising and was of little use for the purpose indicated unless corrected by introducing other gases which might be done by anyone skilled in the art according to the temperatures likely to be encountered by the tube in question. It might as well be said that it was invention to produce a neon mercury tube. A neon tube required correction by adding ar-

gon for satisfactory use in low temperatures. Neither an argon nor a neon tube was adequate without the addition of other rare gases. Each only demanded experiment by persons skilled in the art. "Merely to run down every obvious alley until the best route to the desired goal is found cannot be deemed invention." Fink v. Foscato, Inc. (C.C.A.) 79 F.(2d) 842, 843; Ruben Condenser Co. v. Aerovox Corporation (C.A.) 77 F.(2d) 266-268.

Accordingly we hold the patent void for lack of invention as well as not infringed if it had been valid.

Decree affirmed.