## AMERICAN CORK SPECIALTIES CO., Inc., v. ROBBINS.

### Civil Action No. 4638.

District Court, E. D. New York.

June 21, 194?

Sidney M. Spero, of New York City (W. Lee Helms, of New York City, of counsel), for plaintiff.

Briesen & Schrenk, of New York City (Gustav Drews and Fred A. Klein, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

The question for decision in this case is the validity of Claim 1 of Patent No. 2,160,517, issued May 30, 1939, to Harry Rabinowitz and Murray Rabinowitz, for a combination metal cap and dauber. If the claim is valid, infringement is conceded. So also, novelty and utility are conceded. There remains, therefore, only the question of invention.

The claim describes an article of manufacture and reads as follows:

"1. A device including a one piece metallic screw cap having a top disc-like portion and a depending threaded skirt portion, a liner of relatively soft material in the cap disposed against said top portion, the latter and the liner having alined perforations, a one piece wire member adapted to carry a dauber at one end and having its other end laterally bent and formed into a closed coiled portion of round wire in register with said perforations, and a rivet extending snugly through said perforations and said coiled portion and having a closed head externally sealingly engaging the top portion, the rivet having a hollow portion expanded over the coiled portion for securing the wire member, the coiled portion clamping the liner against said top portion about the perforation therein, and the rim portion of said perforation being downwardly deformed to provide an annular seat for the said head of the rivet."

There is no prior art to set up in the answer; and at the trial, but brief reference was made to certain articles and patents to show the state of the art.

In the specification, the patentees point out that theretofore container closures and wires for holding tools or daubers that are disposed in the containers consisted of wires forced into a cork body or stopper, or into a bore formed in a projection of a Bakelite cap. It is stated that the cork dauber was an expensive contrivance; and that Bakelite is very brittle and comparatively low in tensile strength. The inventors assert that it was not known prior to their invention how to provide a practical, cheap way of securing a wire to a metal closure. They believed welding or soldering would be unduly expensive. In consequence they sought a device which would meet the limitations of the known art while at the same time securing a closure that would be fluid tight.

The problem as presented in the specification was clearly one for solution by anyone skilled in the art of taking three elements making up this device, to wit, a metallic screw cap, a liner of relatively soft material, and a wire member adapted to carry a dauber at one end, and fashioning them together effectively.

The specification recites that:

"In assembling, the closure and liner may have been initially formed with the perforations 17 and 18. The rivet and coil 22 may then be disposed in coaxial relation and may be brought together to be assembled into the complete device of Fig. 1, in a single operation."

In passing it may be observed that there was no suggestion that the method employed involved any invention. To secure a riveted connection between the metal cap with its flexible lining and the eye of the depending wire member, was well within the range of any mechanic who knew how to use a riveting device. The provision of eyelets at the ends of wires for receiving fastening elements was an old expedient, as is shown in the Leistner and Fortes patents. By following the usual and customary riveting operation employing the usual riveting machine, such a union could have been effected. Of necessity, the operation would result, if competently performed, in securing a tight slit or union of the members sought to be joined.

It was suggested during the trial that not only did the patented device effect a fluid-tight joint, but also a vapor sealing not obtainable with the known forms of the prior art. As to that asserted advantage, the proof afforded is not convincing. Other advantages, such as low cost of production, under well established principles, cannot be accepted as evidence of invention. This article of the patent is not proved to have met a long felt want. The problem that the inventors set themselves is not unlike that disclosed in Fink v. V. Foscato, Inc., 2 Cir., 79 F.2d 842; and I have to conclude, as did the court in that case, that the experiments or trials of the patentees were well within the range of the skill of any competent mechanic in the field.

It is urged by the patentees, however, that even simple inventions which provide solution of standing problems in the industries have been frequently sustained, citing Kurtz v. Belle Hat Lining Co., 2 Cir., 280 F. 277; David v. Harris, 2 Cir., 206 F. 902; Greenwald Bros. v. La Vogue Petticoat Co., 2 Cir., 226 F. 449; Western Electric Co. v. LaRue, 139 U.S. 601, 11 S.Ct. 670, 35 L.Ed. 294; Kimball Co. v. Noesting Pin Ticket Co., 2 Cir., 262 F. 148; Van Heusen Products v. Earl & Wilson, D.C., 300 F. 922; Bossert Electrical Construction Co. v. Pratt Chuck Co., 2 Cir., 179 F. 385; Bestwall Mfg. Co. v. U. S. Gypsum Co., 7 Cir., 270 F. 542; Krementz v. Cottle Co., 148 U.S. 556, 13 S.Ct. 719, 37 L. Ed. 558.

So much may be conceded, but, of course, it cannot be argued from these cases that in the specific circumstances disclosed in the record in this case, there was a standing problem. To defeat the patent it is not necessary to apply the rigid tests suggested in the current trend of decisions, as, for example, Cuno Engineering Corporation v. Automatic Devices Corporation, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58. Long before that case was decided, it was said in Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 231, 27 L.Ed. 438:

"To grant a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences. * * *"

The patent in suit is, therefore, invalid for lack of invention. The complaint for a declaratory judgment will be sustained and the counterclaim of the defendant dismissed.

Appropriate findings of fact and conclusions of law will be filed concurrently with this opinion.