PARMELEE PHARMACEUTICAL COM-
PANY and William V. Consolazio,
Plaintiffs,

v.

Lawrence C. ZINK, doing business as
Zink Safety Equipment Com-
pany, Defendant.

No. 11114.

United States District Court
W. D. Missouri, W. D.

March 1, 1960.

Judgment Affirmed Jan. 25, 1961.
See 285 F.2d 465.

822

Hovey, Schmidt, Johnson & Hovey, Kansas City, Mo., for plaintiffs.

Thomas E. Scofield, Kansas City, Mo., James C. Wood and Lloyd Mason of Schroeder, Hofgren, Brady & Wegner, Chicago, Ill., for defendant.

RIDGE, Chief Judge.

Plaintiffs claim infringement of Letters Patent 2,478,182, relating to sodium chloride tablets, which was allowed by the Patent Office on August 9, 1949, upon application dated January 16, 1945, filed by plaintiff William V. Consolazio. As allowed, the patent contains this single claim, viz.:

"An internally reinforced sodium chloride tablet comprising compressed granules of sodium chloride; and an internally disposed cellular stroma of a thin, permeable, dialyzing film of a material selected from the group consisting of cellulose acetate and cellulose nitrate, the cells of said stroma containing said granules of sodium chloride, whereby the sodium chloride is rendered slowly available when the tablet reaches the gastro-intestinal tract, the solution time of the sodium chloride in said tablet in the gastro-intestinal fluids being from 60 to 80 minutes for a ten grain tablet."

Plaintiff Parmelee Pharmaceutical Company is the exclusive licensee of Consolazio for the remaining life of the Letters Patent, to make, sell and use tablets covered by the above claim.

Plaintiffs charge that defendant, Lawrence C. Zink, doing business as Zink Safety Equipment Company, has been and still is infringing the above Letters Patent within the territorial jurisdiction of this Court, by selling an impregnated sodium chloride tablet under the trade name "Fairway Crystals." Standard Safety Equipment Company, of Palatine, Illinois, manufactured and sold to defendant, Zink, the accused impregnated salt tablets. Hence, Standard Safety Equipment Company, of Palatine, Illinois, is controlling and bearing the cost of defense to this action.

Consolazio's broad contention is that his invention, as defined in the above claim, relates generally to provide a salt tablet impregnated with any material capable of permitting slow controlled release of the salt within the gastro-intestinal tract during a specified optimum period, so as to supply the required amount of sodium chloride to a person's system while maintaining the concentration of the salt throughout the dissolution time thereof below the level at which the salt would cause adverse reactions to the user

of the tablet. The evidence is to the effect that the patented impregnated tablet commences to release salt immediately upon ingestion of the tablet; thereafter, a slow controlled release of the salt from the patented tablet occurs, regardless of the area of the gastro-intestinal tract in which the tablet is disposed at any time interval during the approximately 60 to 80 minutes' period required for complete dissolution of the salt. Thus, the gist of the invention resides in a salt tablet structure that is effective in delaying or in slowing down the rate of dissolution of salt; a structure that is effective in controlling the rate of distribution, such that the completion of solution is not reached until one hour or a little more; a structure whose essential physical feature is a thin, permeable, dialyzing film covering the surface of the salt grain. The novelty of the patent in suit is that cellulose acetate and cellulose nitrate used as a film substance in the particular way, will function in the particular way, as stated in the claim of the patent.

The defense here made is non-infringement, premised on the ground that the claim of the patent, specifying impregnating material consisting of "cellulose acetate" or "cellulose nitrate", is not entitled to any range of equivalency beyond those named materials, so that the accused salt tablets which the evidence shows do not contain either of these materials but use shellac as an impregnating substance, could not and do not infringe the patent claimed. Invalidity of the above Letters Patent by reason of being anticipated by the prior art; and lack of novelty of invention, in that the patent does not disclose an advance over the state of the prior art, but involves, at most, expected routine endeavors of one working in the filed, are also defensively asserted.

In light of the evidence adduced, we shall first consider the issue of infringement, as it is thereby established that the single claim of the patent in suit makes call for a "product" limited to a sodium chloride tablet with an impregnating film material "selected from the group *consisting* of cellulose acetate and cellulose nitrate," (emphasis added) and defendant's accused tablet admittedly does not contain either cellulose, acetate or cellulose nitrate as an impregnating material. Plaintiffs' proof is that the impregnating substance of the accused tablets is "shellac". Defendant did not make any proof of the impregnating agency used by Standard in the manufacture of the accused tablet, but it did, at direction of the Court at pre-trial conference, file with the Clerk a sealed statement of its impregnating material, which the Court did not require to be revealed in light of the proof made by plaintiff, and the defense here made, to the effect that the claim of the patent in suit is so limited, specifically to cellulose acetate and cellulose nitrate, as to not be entitled to any range of equivalents. In light of the record thus made, if a negative answer is given to defendant's contention that the claim in suit is not entitled to any range of equivalents, infringement would be here present, regardless of the material actually used by Standard as an impregnator in the manufacture of the accused tablets, provided the subject matter of the patent in suit should be found to define a patentable invention.

The single claim of the patent in suit was granted to patentee only after a lengthy prosecution in the Patent Office. Four rejections, covering in all, 26 claims made by the patentee, and five amendments thereto, were considered by the Patent Office. As originally filed, the application for patentability was titled, "Tablets and method of making same." Eleven claims were made in that application, seven claimed a product, "salt tablet," and four a method of preparing the claimed tablets. That original application covered not only "salt" but "other active materials." In that application it was stated: "The impregnating or coating agencies which have been found to be most effective are cellulose derivatives, and, in particular, cellulose acetate and cellulose nitrate." F.W., p. 3. All said claims were rejected by the Examiner for the Patent Office on the ground that

the claims were "lacking in invention over the prior art" cited; as being "too broad"; and some were rejected as "being for the obvious process for one skilled in the art." All the claims were related to two species, "cellulose nitrate and to cellulose acetate." Those "generic claims (were) rejected as unpatentable" and Consolazio was required to make an "election of a single species" for his claim to a patent. He thereafter designated "cellulose acetate." In the final claim he elected "a material selected from the group consisting of cellulose acetate and cellulose nitrate." Paper No. 2, Apr. 21, 1945.

After the first rejection of his claims by the Patent Office, Consolazio cancelled all the original claims and substituted eleven new claims. The following claim is typical of those then submitted:

"16. An impregnated salt tablet characterized by slow availability of salt, comprising small granules of salt compressed into tablet form, the major portion of said small granules being individually contained in small cellular compartments of a honeycomb structure comprising a water-insoluble, non-toxic, dialyzing material, whereby solution takes place by dialysis of fluid into small cellular compartments, dialysis of salt into the surrounding fluid, and bursting of the resulting enlarged compartments."

Claim 16, supra (as well as the other ten substituted claims), merely defined the film material with which the tablet was impregnated as "water-insoluble, non-toxic, dialyzing material." The material was not identified further than by its physical characteristics just quoted, and the stated fact of slow availability of the salt. The claims in this form were maintained through three separate rejections by the Patent Office. In the first such rejection (Paper No. 6, May 24, 1946) the Patent Office rejected such claims over additional specified cited prior art, because Claims Nos. 12, 13, 14, 16, 17, 18, 20 and 21, were "lacking invention over

Miller," (2,001,587) as Miller "shows sodium chloride contained in a honeycomb structure of cellulose nitrate; (nitrocellulose or celluloid); that Horowitz, (1,021,674) shows a medicament mixed with hardened gelatin in a tablet. The medicament would dissolve in the same way as in applicant's composition." Eilertsen, 975,405, was cited as it "shows cellulose nitrate mixed with a medicament in tablet form. This is in the form of a honeycomb structure." Claims 15, 19 and 22 were rejected as "not being readable on the elected species, cellulose acetate" which election patentee was required to make after the first rejection of claims. Claims 12, 13, 14 and 20, were "rejected as too broad and indefinite as to the active material." Claims 12, 16 and 20 were "rejected as too broad as to the dialyzing material"; 13 and 17 were "rejected as too broad as to cellulose derivative as only two examples are disclosed—cellulose acetate and cellulose nitrate." (This is important to note because of the terms, and phrase, "group consisting of cellulose acetate and cellulose nitrate," found in the claim in suit. This rejection definitely disclosed two separate generic species of cellulose derivatives as examples considered by the Patent Office in disallowance of claims.)

The patentee then attempted to distinguish his invention from the prior art cited, but on June 11, 1948, all the substituted claims were rejected. Thereafter, on December 14, 1948, all method claims submitted by patentee were withdrawn. Three new additional product claims were submitted, only one of which was allowed as the claim of the patent in suit. In connection with that presentment of claims patentee stated in that amendment to his application:

"The present amendment materially reduces the number of claims in the application and presents three claims which have been carefully drawn to point out *clearly and distinctly* the *unique structural features* and *property* of. applicant's product." (Emphasis added.) P. 40, F.W.

On Page 42 of the File Wrapper patentee further stated in connection with that submission of claims:

"The newly presented claims have been carefully drawn, employing the *terminology used in the specification, and have been precisely limited to the structural features of the tablet, as well as the properties of permeable membrane* elements of the structure." (Emphasis added.)

The instant File Wrapper reveals a very crowded prior art in which a great number of coating materials were disclosed in forming tablets for the purpose of retarding the availability for digestion of medicine reaching the stomach and until it reaches the intestinal tract, such as cellulose ester, nitro-cellulose celluloid, gelatin, shellac, lacquers, etc. Though the gist of the patent in suit is as above stated, the File Wrapper reveals the same was awarded to Consolazio as a patent claim only after he precisely restricted and limited his claim to "a material selected from the group consisting of cellulose acetate and cellulose nitrate." The single claim so allowed only exists as a product patent having a singularly defined material, namely, sodium chloride, with a filming material consisting of cellulose acetate and cellulose nitrate. Before allowance of that patent claim, Consolazio was required, because of Patent Office action, to file successive amendments to his original patent application in limitation of his claimed "water-insoluble, non-toxic, dialyzing material." We need not delineate each such action so taken by that patentee. Suffice to say that one may assume that Consolazio would have been entitled to a large range of equivalents, one embracing the accused tablets, had his original claims been allowed, but it is transparent from the File Wrapper of this Patent that in order to meet objections of the Patent Office, based on references to the prior art, he was required to disclaim, and did disclaim, a number of equivalents, and a very different issue as to equivalents is here presented than mere File Wrapper estoppel; although that issue is also a presentable one in construction of the instant claim. What Consolazio disclaimed before the Patent Office he "cannot now regained by recourse to the doctrine of equivalents, which at most operates, by liberal construction, to secure to the inventor the full benefits * * * of the claim allowed." Exhibit Supply Company v. Ace Patents Corporation, 315 U.S. 126, 137, 62 S.Ct. 513, 519, 86 L.Ed 736.

The single claim allowed of the patent in question was the first one presented to the Patent Office by Consolazio, in which he clearly set forth the physical structure of his claim to an impregnated sodium chloride tablet "consisting" of a specified impregnating material to attain the approximate period of dissolution thereof, which as above stated is the gist and novelty of that patent claim. That being so, the inference is, from the proceeding had in the Patent Office as revealed by the File Wrapper, and the use by Consolazio of the word "consisting" in the instant claim, that we here have a situation where the Patent Office intended to allow Consolazio a claim of patent limited to a sodium chloride tablet containing an impregnator of nothing other than the "group consisting of cellulose acetate and cellulose nitrate." This is suggested not only by the File Wrapper but in the specifications and the claim, itself, in relation to this product patent. Hence the scope of such a claim is to be construed as being confined to those particular materials and none other. Such a patent claim has no range of equivalence, as established by the following authorities:

In Ex parte Dotter, 12 U.S.P.Q. 382, the Board held that where a claim included expressions such as "loose granules of a natural material of a group comprising wood and grains" and was prosecuted against prior art which disclosed the use of "cellu-cotton" associated with a gas mask, the prosecuted claim was anticipated; but if the wording of applicant's claim was amended from "comprising" to "consisting" the claim could be allowed as the claim would be confined to "wood

and grains" and not subject to equivalents. From the File Wrapper, that is apparently what happened to Consolazio's claim while being processed in the Patent Office.

 In Ex parte Jones and Swezey, 66 U.S.P.Q., 487, the Board ruled that the word "consists" in a composition claim excludes materials other than those definitely named. The Board there said:

"It has been well established that this term in a composition claim is exclusive of materials other than those definitely named."

In accord: In re Bertsch, 1942, 132 F.2d 1014, 30 CCPA 813; Claude Neon Lights v. Rainbow Lights, 2 Cir., 1937, 90 F.2d 959, affirming D.C., 58 F.2d 384; Hoskins Mfg. v. General Electric Co., D.C.N.D.Ill.1914, 212 F. 422; Ex parte Rawles, 3 U.S.P.Q. 199; Ex parte Schmidt and Seydel, 67 U.S.P.Q. 183. Compare, In re Sawyer Electrical Mfg. Co., 1944, 144 F.2d 893, 32 CCPA 740.

"To consist of is used in indicating the parts or material of which a thing is composed." Webster's Internat.Dict., 2d Ed., Unabr.

In light of the foregoing, we rule that the claim of the patent in suit is not infringed by a sodium chloride tablet impregnated with *shellac* or any other impregnating substance other than cellulose acetate and cellulose nitrate, no matter how processed. Therefore, judgment of non-infringement should be entered in this action without reaching the interesting issue of patentability of the plaintiffs' instant patent claim.

 Defendant's prayer for attorney's fees under 35 U.S.C.A. § 285, is disallowed. The fact that Standard informed Parmelee two years before suit was brought that tablets manufactured and sold by Standard contained neither cellulose acetate nor cellulose nitrate does not make this an "exceptional case" within the ambit of that statute. Standard has never factually disclosed to plaintiffs what is the character and nature of its impregnating agency used in "Fairway Crystals" impregnated salt tablets, and has not been required to do so in this case, because of its seemingly justified insistence of non-infringement and claim of forced disclosure of a "trade secret." Had Standard voluntarily furnished plaintiffs with a certified analysis of the ingredients of its tablets before trial, we would be more disposed to its claim for attorney's fees.

Counsel prepare judgment entry within five days.

It is so ordered.